* * * * * * * * * * *
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Chief Deputy Commissioner Gheen and the briefs and arguments before the Full Commission. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence or rehear the parties or their representatives. The Full Commission affirms with some modifications the Opinion and Award of the Chief Deputy Commissioner.
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as matter of law the following, which were entered into by the parties at the hearing before the Chief Deputy Commissioner as:
 STIPULATIONS
1. The parties are subject to and bound by the North Carolina Workers' Compensation Act.
2. All parties have been correctly designated, and there is no question as to misjionder or nonjoinder of parties.
3. In a Form 60 filed on September 23, 2003, defendants admitted that plaintiff sustained an injury by accident on April 2, 2003.
4. On April 2, 2003, an employer-employee relationship existed between the parties.
5. Plaintiff's average weekly wage was $384.57, with a compensation rate of $256.39 per week.
6. The following exhibits were admitted into evidence at the Deputy Commissioner's hearing and are hereby ADDED to the transcript of the Deputy Commissioner's hearing:
 a. Plaintiff's medical records;
 b. Plaintiff's letter of resignation;
 c. Industrial Commission forms and order;
 d. Plaintiff's answers to interrogatories;
 e. Plaintiff's personnel file; and
 f. Surveillance report.
7. Defendants admit that plaintiff's injury arose out of and in the course of her employment; however, defendants deny the nature and extent of the injury complained of and the alleged consequences associated with the April 2, 2003 injury.
 * * * * * * * * * * *
Based upon the competent evidence of record herein, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the Deputy Commissioner's hearing, plaintiff was 48 years old and was born on December 4, 1955. Plaintiff was employed by defendant-employer in the accounts receivable department where she performed light duty, predominantly sedentary, administrative tasks such as bookkeeping and other accounting and insurance-related work.
2. On April 2, 2003, plaintiff was injured when she fell down approximately five to seven wooden stairs, striking her buttocks on each step as she fell. Plaintiff tried to continue working, but began having pain in her left buttock and lower back. Plaintiff went to the Hart Industrial Clinic, where she was diagnosed with a left buttock contusion and restricted to light duty work with no lifting over ten pounds. On April 4, 2003, plaintiff was diagnosed with a coccyx fracture and on April 11, 2003, physical therapy was recommended.
3. At defendants' request, plaintiff was referred for treatment to Dr. Stephen Sladika and Dr. Alfred Geissele at Carolina Orthopaedic Specialists. On May 21, 2003, Dr. Sladika examined plaintiff and noted an impression of left gluteal hematoma and left coccyx/sacral fracture. On July 16, 2003, Dr. Sladika felt plaintiff's coccyx fracture was healing, and discussed with her that she might have degenerative disc disease and a herniation that were not visible on an x-ray. On July 29, 2003, plaintiff submitted to an MRI of the lumbar spine, which did not reveal any lumbar stenosis. After reviewing the MRI and a bone scan performed on August 20, 2003, Dr. Geissele diagnosed plaintiff with probable lumbar radiculitis secondary to lateral recess stenosis rather than a coccyx fracture, and recommended epidural steroid injections. Dr. Geissele noted that plaintiff could continue to work unrestricted until her next follow-up appointment.
4. Plaintiff had difficulty performing her job duties because the sitting position required by the job caused significant pain. On August 22, 2003, plaintiff resigned her employment with defendant-employer to take a higher paying position with AccuForce, a temporary employment agency. Plaintiff could stand while performing her job duties at the AccuForce assignment. Plaintiff was employed by AccuForce from August 25, 2003 through September 23, 2003, when she left the employment due to continued pain. After leaving AccuForce, plaintiff did not look for work and did not participate in any vocational rehabilitation.
5. On September 12, 2003, plaintiff was treated by Dr. Gary Dawson, a board certified specialist in physical medicine and rehabilitation at the Pain Relief Centers. Dr. Dawson ordered a TENS unit for plaintiff, as well as an epidural steroid injection and an MRI. On October 6, 2003, Dr. Dawson restricted plaintiff to light duty sedentary work. On November 6, 2003, Dr. Dawson informed plaintiff that the results of the MRI did not reveal any abnormalities and he felt he had no further treatment options to offer plaintiff. Dr. Dawson ordered a functional capacity evaluation (FCE), which was performed on December 5, 2003. Following the FCE, Dr. Dawson stated that as of January 2, 2004, plaintiff was at maximum medical improvement, could perform work at a medium duty level, and had a zero percent impairment rating, utilizing Industrial Commission guidelines.
6. At his deposition, Dr. Dawson explained that all studies to determine the etiology of plaintiff's symptoms of chronic left gluteal pain were unsuccessful. Dr. Dawson testified that plaintiff likely suffered temporary pain from the contusion sustained in the fall, but he concluded that plaintiff's complaints of chronic pain were not the result of her work-related injury. Rather, Dr. Dawson believed that there was likely a psycho-social component to plaintiff's complaints of pain.
7. Following a hysterectomy on January 8, 2004, plaintiff went to Dr. Jamal Kalala, her primary family physician who is board-certified in internal medicine and nephrology. On February 2, 2004, Dr. Kalala diagnosed plaintiff with high blood pressure and depression resulting from chronic pain. On March 3, 2004, Dr. Kalala took plaintiff out of work due to her medical conditions and severe pain shooting from her left buttock into her leg. At his deposition, Dr. Kalala stated that based upon his treatment of plaintiff, he was "very sure" that plaintiff's low back injury and pain caused her increased blood pressure and depression. Dr. Kalala further testified that plaintiff did not have a pre-existing history of pain symptoms similar to those she experienced after her work-related injury.
8. On April 19, 2004, plaintiff saw Dr. Kenneth Leetz, psychiatrist, for an evaluation. Dr. Leetz diagnosed plaintiff with major depression, moderate in severity, related to her complaints of chronic pain and a somatoform pain disorder with both a psychological and general medical component. When Dr. Leetz initially treated plaintiff, he felt she was unable to work due to the extent of her depression. At his deposition, Dr. Leetz testified that, based on her medical history, examination, and testing, plaintiff's work-related injury was a substantial causative factor in her depression and somatoform disorder. Dr. Leetz projected that in the future plaintiff would need to be seen by a psychiatrist every three to six months for a medication check, depending on her progress. Dr. Leetz stated that as of August 19, 2004, plaintiff had no work restrictions from a psychiatric perspective.
9. Plaintiff also received treatment from Dr. Robert Boyd, obstetrician and gynecologist at The Woman's Clinic, for conditions unrelated to the accident. On August 30, 2004, Dr. Boyd prepared a letter stating that plaintiff's depression was caused by her injury at work. During his deposition, Dr. Boyd testified that he felt plaintiff's depression pre-dated her hysterectomy, as plaintiff's gynecological pain improved after her hysterectomy but her depression and back pain continued. Dr. Boyd acknowledged that there is no mention of depression in any of his treatment notes and testified that he did not know when plaintiff's symptoms of depression began.
10. On April 26, 2004, plaintiff saw Dr. Stuart Meloy at Piedmont Anesthesia and Pain Consultants. Plaintiff complained of left buttock pain. Dr. Meloy diagnosed plaintiff with sacroiliac joint syndrome and prescribed injection therapy as well as physical therapy. Plaintiff responded favorably to the injection therapy, which Dr. Meloy testified helped confirm the diagnosis. On August 2, 2004, Dr. Meloy noted that based on plaintiff's description of pain, she was unable to work at gainful employment until her condition improved. At his deposition, Dr. Meloy testified that since plaintiff had no complaints of chronic pain of the same nature prior to the work-related injury and because there was no other identifiable cause other than the injury at work, plaintiff's accident more likely than not was a causative factor in the development of her condition. Dr. Meloy also causally related plaintiff's depression to the compensable injury by accident, and explained that depression is commonly associated with chronic pain, loss of work status, and inability to perform normal activities.
11. Plaintiff next sought treatment at Charlotte Orthopedic Specialists from Dr. Leon Dickerson and Dr. Alden Milam, a spine specialist with special training in piriformis syndrome. Plaintiff's complaints were left buttock pain radiating into her left leg. Dr. Milam noted upon examination that plaintiff was exquisitely tender to very light palpation and touching of the buttock area. Dr. Milam initially diagnosed plaintiff with sciatica secondary to piriformis syndrome. In October and November 2004, plaintiff had several piriformis injections, the first of which offered plaintiff some temporary relief for a few hours, however, her symptoms returned. Plaintiff's second injection failed to provide any relief. On December 1, 2004, Dr. Milam noted that plaintiff was not a surgical candidate and recommended physical therapy. On January 17, 2005, Dr. Milam noted that other than an FCE, he had no further treatment options to offer plaintiff. He felt that based upon her symptoms, plaintiff was unable to work.
12. On January 31, 2005, plaintiff underwent an FCE, which could not be completed due to plaintiff's functional limitations. On February 14, 2005, Dr. Milam noted that plaintiff was totally disabled, that she continued to report severe pain, and that the use of a TENS unit on a daily basis was proven to cut down on plaintiff's need for additional medication. Dr. Milam suggested plaintiff see a pain management specialist for a temporary spinal cord stimulator.
13. At his deposition, Dr. Milam testified that the etiology of plaintiff's pain is unclear and that prior reports, as well as his observations, both support and contradict a diagnosis of piriformis syndrome or sacroilitis. Dr. Milam explained that piriformis syndrome is very difficult to diagnose and the condition is often accompanied by negative objective tests. However, Dr. Milam stated that there were many things about plaintiff's exam that suggested piriformis syndrome, such as her report of pain when sitting, her normal studies, and the traumatic fall. Dr. Milam explained that the most likely cause of plaintiff's symptoms is scar tissue over the sciatic nerve. Regarding the piriformis injections, Dr. Milam elaborated that plaintiff's temporary relief from pain following the injection would be the expected diagnostic response. Dr. Milam explained that he could not prove that plaintiff has piriformis syndrome utilizing a strict application of scientific method and confirmed that the only procedure to prove his diagnosis is exploratory surgery, which he did not recommend. Dr. Milam testified at some length to plaintiff's symptoms and his findings are consistent with his opinion. Dr. Milam did not believe plaintiff was malingering and stated that plaintiff's symptoms have been very consistent over the course of her treatment.
14. In regard to the causation of plaintiff's left buttock and leg pain, Dr. Milam stated his opinion that based on the fact that plaintiff's symptoms began at the time of her fall, the fall could have caused plaintiff's pain. Dr. Milam's confidence in his opinion was "[F]ifty-one percent, probably. . . . [I]t's marginal, but certainly within a reasonable . . . degree of medical certainty." He also stated that he had found no other cause for plaintiff's condition.
15. The Full Commission gives greater weight to the causation opinions of Dr. Kalala, Dr. Leetz, Dr. Boyd, Dr. Meloy, and Dr. Milam, than to the opinions of Dr. Dawson.
16. The Full Commission finds by the greater weight of the medical evidence that plaintiff's work-related accident on April 2, 2003 resulted in piriformis syndrome, depression, and elevated blood pressure, that plaintiff is not at maximum medical improvement, and that she requires continuing physical therapy and a TENS unit.
17. The Full Commission finds that plaintiff failed to prove that she was disabled from any employment from September 23, 2003, her discharge from employment, until March 3, 2004, when Dr. Kalala took her out of work. No doctor took plaintiff out of work during this time period, plaintiff was capable of some work, and she did not make a reasonable effort to find employment. Since March 3, 2004 plaintiff has been temporarily totally disabled from any employment.
 * * * * * * * * * * *
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. On April 2, 2003, plaintiff sustained an injury by accident arising out of and in the course of her employment, which defendants admitted on a Form 60 filed on September 23, 2003. N.C. Gen. Stat. § 97-2(6).
2. In a claim for additional compensation for medical treatment, the treatment must be "directly related to the original compensable injury." Pittman v. Thomas Howard,122 N.C. App. 124, 130, 468 S.E.2d 283, 286, disc. review denied,343 N.C. 513, 471 S.E.2d 18 (1996). It is the burden of the injured worker to prove that the injury or condition being treated is causally related to the compensable injury by accident. Snead v. Mills, Inc., 8 N.C. App. 447, 174 S.E.2d 699
(1970). The North Carolina Court of Appeals stated in Parsons v.Pantry, Inc., 126 N.C. App. 540, 485 S.E.2d 867 (1997) that once the Commission has found a claim compensable, a rebuttable presumption arises that the treatment is directly related to the original compensable injury. The burden then shifts to defendants to prove that the medical treatment is not directly related to the compensable injury. Id. In Reinninger v. PrestigeFabricators, Inc., 136 N.C. App. 225, 523 S.E.2d 720 (1999), the Court of Appeals applied the Parsons presumption to a case in which the parties entered into a Form 21 Agreement for Compensation which was approved by the Commission and therefore constituted an "award" of the Commission, pursuant to N.C. Gen. Stat. § 97-82.
3. In the case at bar, defendants admitted the compensability of plaintiffs' injury by accident by filing a Form 60 and paying compensation pursuant to N.C. Gen. Stat. § 97-18(b). N.C. Gen. Stat. § 97-82(b) provides that such payment constitutes an "award of the Commission on the question of compensability of and the insurer's liability for the injury for which payment was made."Id. As such, the Parsons presumption applies and defendants failed to rebut the presumption that the medical treatment is directly related to the compensable injury. Perez v. AmericanAirlines, ___ N.C. App. ___, 620 S.E.2d 288 (2005); Parsons v.Pantry, Inc., supra. In addition, the greater weight of the medical evidence of record establishes that plaintiff's left buttock condition is directly and causally related to her injury by accident on April 2, 2003.
4. Although the Parsons presumption does not apply to plaintiff's depression and elevated blood pressure, the medical evidence in the record is uncontradicted that these conditions are causally related to plaintiff's compensable injury by accident and the resulting chronic pain.
5. Although defendants admitted the compensability of plaintiff's injury by accident by filing a Form 60, the Form 60 does not create a presumption of continuing disability and therefore the burden of proving disability remains with plaintiff. Sims v. Charmes/Arby's Roast Beef,142 N.C. App. 154, 542 S.E.2d 277 (2001).
6. Plaintiff has the burden of proving disability, defined as a loss of wage earning capacity. Russell v. Lowes ProductDistribution, 108 N.C. App. 762, 425 S.E.2d 454 (1993). In order to meet the burden of proving disability, plaintiff must prove that she was incapable of earning pre-injury wages in either the same or in any other employment and that the incapacity to earn pre-injury wages was caused by plaintiff's injury. Hilliard v.Apex Cabinet Co., 305 N.C. 593, 290 S.E.2d 682 (1982). An employee may meet the initial burden of production by producing one of the following: (1) medical evidence that she is physically or mentally, as a result of the work-related injury, incapable of work in any employment; (2) evidence that she is capable of some work, but that she has, after a reasonable effort, been unsuccessful in her efforts to obtain employment; (3) evidence that she is capable of some work, but that it would be futile because of preexisting conditions, such as age, inexperience, or lack of education, to seek employment; or (4) evidence that she has obtained other employment at wages less than her pre-injury wages. Demery v. Perdue Farms, Inc., 143 N.C. App. 259,545 S.E.2d 485 (2001); Russell v. Lowes Product Distribution,supra. When a plaintiff meets her burden of showing disability, the burden then shifts to defendant to produce evidence that suitable jobs are available for the employee and that the employee is capable of obtaining a suitable job, taking into account both physical and vocational limitations. Demery v.Perdue Farms, Inc., supra.
7. In this case, plaintiff failed to show that she was disabled from any employment after her discharge from employment on September 23, 2003. No doctor took her out of work, she was capable of some work, and she made no efforts to find employment. However, plaintiff met her burden of proving disability as of March 3, 2004, when her physicians took her out of work and the medical evidence showed that she was physically and mentally, as a result of her work-related injury, incapable of work in any employment. Russell v. Lowes Product Distribution, supra.
8. As a result of her injury by accident, plaintiff was temporarily totally disabled and is entitled to temporary total disability compensation at the rate of $256.39 per week beginning March 3, 2004 and continuing until further Order of the Commission. N.C. Gen. Stat. § 97-29.
9. Plaintiff is entitled to payment of all medical expenses incurred or to be incurred as a result of her compensable injury by accident, including treatment of her elevated blood pressure and depression, physical therapy and a permanent TENS unit, for so long as such examinations, evaluations and treatments may reasonably be required to effect a cure, give relief or tend to lessen plaintiff's period of disability. Dr. Milam is designated as plaintiff's treating physician. N.C. Gen. Stat. §§ 97-19;97-25.
 * * * * * * * * * * *
Based upon the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission enters the following:
 AWARD
1. Subject to the attorney's fee below, defendants shall pay plaintiff temporary total disability compensation at the rate of $256.39 per week beginning March 3, 2004 and continuing until further Order of the Commission.
2. Defendants shall pay all related medical expenses incurred or to be incurred by plaintiff as the result of her injury by accident, including treatment for depression and elevated blood pressure, physical therapy and a permanent TENS unit, for so long as such examinations, evaluations and treatments may reasonably be required to effect a cure, or give relief or tend to lessen plaintiff's period of disability. Dr. Milam is designated as plaintiff's treating physician and may make appropriate referrals for additional medical and rehabilitative care and treatment.
3. A reasonable attorney's fee of 25% of the compensation due plaintiff under paragraph 1 of this Award is approved for plaintiff's counsel and shall be paid directly to plaintiff's counsel.
4. Defendants shall pay the costs.
This 6th day of February 2006.
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
DISSENTING:
 S/_______________ DIANNE C. SELLERS COMMISSIONER